MOORE v. COLER et al.

(Supreme Court, Appellate Division, Third Department.   June 27, 1906.)

PRINCIPAL AND AGENT—NEGLIGENCE OF AGENT—EVIDENCE.

Defendant C. sold certain Texas county bonds to B., guarantying the payment thereof to B. and to any of his clients to whom he might sell them, and agreeing to collect the principal and interest without cost to the holders. B. sold the bonds to plaintiff's father, and plaintiff acquired them under his father's will. C. later formed a partnership with the other defendants, and collected interest on the bonds until default, when they brought suit in Texas on a large number of similar bonds, and requested plaintiff to forward his bonds to them or their attorney at the earliest possible moment, that they might be included in the suit by amendment. This plaintiff did not do, and defendants, believing that he had done so, stated that his bonds were included in a certain judgment recovered in Texas, after which it was discovered that they were not so included, when an action on the bonds was barred by the Texas statute of limitations. *Held*, that defendants were not guilty of negligence with reference to plaintiff's bonds, rendering them liable for the value of the bonds.

Appeal from Trial Term.

Action by Edwin G. Moore against William N. Coler and others. From a judgment in favor of plaintiff, and from an order denying defendants' motion for a new trial, they appeal. Reversed.

See 94 N. Y. Supp. 630.

The action was tried as one for negligence. In 1881 the defendant W. N. Coler, Sr., who at that time was doing business under the name of W. N. Coler & Co., sold to one Henry E. Barnard a number of coupon bonds of Marion county, Tex., amounting to $3,900 at par, which were payable to bearer on July 1, 1893, with interest at 8 per cent., payable annually. On January 1, 1887, W. N. Coler, Jr., became a partner with his father. and in 1888 the defendants Bird S. Coler and James W. Campbell also became partners; the business all the time being conducted under the name of W. N. Coler & Co. Barnard, who was a lawyer, sold these bonds to various clients, but afterwards took them back again, and on January 1, 1891, sold them to Allen M. Moore, the father of plaintiff, who died July 30, 1894, leaving a will which was proven in August thereafter, and under which the plaintiff acquired such bonds. The interest on the bonds was paid until 1891, the coupons therefor having been sent by Barnard to Coler & Co. for collection, and when collected the amount thereof was remitted to Barnard. In 1892 an action was brought by the defendants in the United States Circuit Court for the Eastern District of Texas against Marion county upon a large number of the unpaid coupons of Marion county bonds in their possession and payable to bearer, including the coupons for the years 1891 and 1892, and also by an amended petition the coupons for 1893, all cut from the bonds sold to Barnard and sent by him to the defendants. In May, 1895, another action was commenced by the defendants in such court against Marion county to recover the principal and interest of certain bonds of that county which had been sent to the defendants for collection. The petition in such last-named action was amended several times, once as late as July, 1896, so as to include the principal of other like bonds held by the defendants. The bonds held by the plaintiff were not, however, included in such action. The suit resulted in favor of the petitioners, and the judgment entered therein was afterwards compromised. The Texas statute of limitations run against the plaintiff's bonds July 1, 1897. The plaintiff did not learn that his bonds were not included in the judgment until some time after the statute of limitations had run against them. This action was begun in 1901 to recover the amount of such bonds from the defendants. The jury rendered a verdict in favor of the plaintiff, and from the judgment entered thereon the defendants have appealed.

Argued before SMITH, CHESTER, KELLOGG, and COCH-RANE, JJ.

Thomas H. Rothwell, for appellants.

S. L. Wheeler, for respondent.

CHESTER, J.   The court ruled on the trial that he should limit the plaintiff upon his claim of negligence against the defendants to what occurred after August 15, 1894, the date when the plaintiff acquired the bonds in suit.   Notwithstanding this limitation, which the court announced practically at the opening of the proofs, he allowed under the defendants' objection evidence tending to show the entire situation and history of the transactions between the plaintiff and the prior holders of the bonds and the defendants back to the time when they were first sold by the defendant W. N. Coler, Sr., to Barnard in 1881. The evidence that was admitted tended to show that the defendant W. N. Coler, Sr., guarantied the payment of these bonds, principal and interest, not only to Barnard, but to the clients to whom he might sell them, and that he would collect the principal and interest upon them without cost to Barnard or to his clients.   It also appeared that the statute of limitations against an action upon the contract of indemnity had run, so that the plaintiff's only remedy against the defendants to recover the amount of the bonds was in this action for negligence. There was no evidence of any agreement on the part of the new members of the firm of W. N. Coler & Co. to assume the obligations of the defendant W. N. Coler, Sr., in the business of W. N. Coler & Co. before they were admitted to partnership, and this evidence, to say the least, must have been highly prejudicial to the defendants upon the only issue which was tried, and that is as to the negligence of the defendants after the plaintiff became the owner of the bonds.   With this evidence in the case we should scrutinize the other evidence of facts and conduct subsequent to such ownership with care to see if there is anything upon which the verdict can be sustained, for it may be that the jury reasoned that the defendants ought to pay the bonds any way, because of the original guaranty given by the senior member of the firm to Barnard, and that they thus lost sight of the real issue for their determination.

The court charged the jury that there was no claim that the defendants were negligent as to Barnard, while he owned the bonds, nor as to the plaintiff's father, and the evidence of facts arising subsequent to plaintiff's ownership of the bonds is very meager.   He testified that he was in the defendants' place of business in New York first in 1894, while the bonds were owned by his father, and talked with the defendants, W. N. Coler, Sr., and Jr., about these bonds; that they said in substance:

"They were pressing a suit for the bonds for collection, and they were having trouble, that in one or two courts they had succeeded, but they were carrying it up.   I cannot say whether they told me that our bonds were in, but I understood from what they said that all the bonds were in suit."

He further testified that he was in New York again in 1896 and saw the defendant W. N. Coler, Jr., and that he said the bonds were includ-

ed in the suit. The plaintiff also produced a letter from the defendants to him, under date of May 10, 1897, in which they say:

"We believe your bonds, etc., are included in the second judgment. * * * You may be assured that everything possible is being done in connection with these matters."

Barnard, who was the attorney for the plaintiff and his father, was repeatedly requested by the defendants to send the bonds to Col. Hernden, their attorney in the suit upon the bonds, but these requests appear to have been ignored. The plaintiff testified on cross-examination:

"I never sent these bonds to Coler & Co. to be put into judgment. They were in my father's safe when I took possession of them, and I put them in my own safe and kept possession of them down to the time of this trial. I have had possession of them all the time."

Barnard also testified that after he had received the letters of the defendants containing such requests he did not send them either to Col. Hernden or to the defendants, and that he did not know whether he told Allen M. Moore to send them to Hernden or to the defendants. This case is lacking in any evidence showing that defendants ever agreed to act as the plaintiff's agent in connection with the collection of these bonds; nor is there any proof that the plaintiff ever authorized the defendants to bring suit upon his bonds in his name or otherwise. The claim is that they were negligent in not including the plaintiff's bonds in a suit which they brought on their own account, and in allowing the statute of limitations to run upon them without taking the necessary steps to enforce collection.

The plaintiff seeks, however, to imply a duty against the present defendants in regard to the collection of his bonds because of the agreement made by W. N. Coler, Sr., with Barnard in 1881 to collect the bonds for Barnard or his clients. When we refer to the business relations between Barnard and the defendants, following that agreement, it appears that when the coupons were in default, and a request was made to send them for collection, the request was complied with and the coupons collected, and when later a request was made to send the bonds to the defendants' attorney in Texas to be sued, which was repeated several times over, the request was disregarded. The last of these requests appears to have been made in a letter from defendants to Barnard under date of March 19, 1894, in ample time to have had the bonds included in the suit. In this letter it was requested that the bonds be sent to Mr. Herndon "at the earliest possible moment if you have not already done so."

The plaintiff claims, however, that he and his assignors were misled by the repeated assurances of the defendants that the bonds were in suit, and that they were included in the judgment. It is true that the defendants made such statements, but they were made upon the false assumption on their part that their request to have the bonds forwarded to the attorney in Texas had been complied with. The plaintiff and his predecessors in title knew that the request had not been heeded. The defendants did not know it until it was too late to have them included in the suit. The plaintiff and Barnard also must have known that no direction or authority was ever given to the defendants to have a suit brought upon the plaintiff's bonds. They were payable

to bearer, and the defendants could not have had an action brought upon them unless they were either lawfully possessed of them or had authority from the plaintiff for that purpose. The fact that Barnard said to the defendants, in reply to one of their letters requesting that the bonds be sent, that "whatever is done in this matter I desire you to do," and that he subsequently told them substantially the same thing, is not sufficient, with the bonds withheld, and with no direction or authority to sue, to authorize the defendants to commence an action upon them or to include them by an amended petition in an action already pending.

The case appears to us to be lacking in evidence showing that the defendants were negligent, and it appears affirmatively that the plaintiff and his predecessors in title were guilty of such contributory negligence as would stand in the way of a recovery by the plaintiff. For these reasons the verdict was unwarranted.

The judgment and order should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.